UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

JOHN DANIE ASHFORD,

                        Plaintiff,                   Case No. 2:15-cv-83

v.                                         Honorable R. Allan Edgar

M. KRUPIARZ, et al.,

                        Defendants.
_____/

**<u>OPINION</u>**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Captain M. Krupiarz and Deputy Warden of Operations Jerry Howard. The Court will serve the complaint against Defendants MDOC Director Daniel H. Heyns, Warden Duncan MacLaren, Warden Mitch Perry, Lori L. Davis, R.N., Michael Millette, P.A., Dr. Jeffrey Balmer, Bureau of Health Care Services, Regional Medical Director at KCF Unknown Party

#1, Regional Medical Director at the Newberry Correctional Facility Unknown Party #2, Lisa Shilling, R.N., and Patricia Lamb, R.N.

## Discussion

I.      Factual allegations

Plaintiff John Danie Ashford, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Captain M. Krupiarz, Deputy Warden of Operations Jerry Howard, MDOC Director Daniel H. Heyns, Warden Duncan MacLaren, Warden Mitch Perry, Lori L. Davis, R.N., Michael Millette, P.A., Dr. Jeffrey Balmer, Bureau of Health Care Services, Regional Medical Director at KCF Unknown Party #1, Regional Medical Director at the Newberry Correctional Facility Unknown Party #2, Lisa Shilling, R.N., and Patricia Lamb, R.N.

In Plaintiff's complaint, he alleges that he was diagnosed as having Narcolepsy in 1989 at the University of Michigan Medical Center Sleep Disorders Clinic.  Plaintiff states that Narcolepsy is characterized by chronic excessive sleepiness, often with sudden loss of muscle tone, and can include sleep paralysis and hypnagogic and hypnopompic hallucinations.  Sleep tends to occur during monotonous conditions, but may also occur during complex tasks, such as eating driving speaking, and writing, and may strike without warning.  Nighttime sleep may be unsatisfying and interrupted by vivid, frightening dreams.  Plaintiff was prescribed a psychostimulant drug and was eventually classified as disabled by the Social Security Administration.

Plaintiff alleges that following his incarceration, his condition continued to interfere with his daily life.  Plaintiff was seen by neurology specialist Dr. Daniel P. Freeman at the Duane L. Waters Hospital for evaluation regarding diagnosis and treatment.  Following the evaluation, Dr.

Freeman continued on medication.  Plaintiff states that the medication was effective in alleviating his symptoms and that he did not suffer from any side effects from the medication.

Plaintiff states that on January 28, 2012, Nurse Practitioner Wilson told him that his medication was being discontinued by order of Defendant Balmer.  On January 31, 2012, Plaintiff kited Defendant Balmer to ask why his medication had been discontinued, but received no response. Plaintiff later discovered that his medication was discontinued pursuant to a policy implemented by the Bureau of Health Care Services, which denied treatment to prisoners for certain conditions, including Narcolepsy, because it had been deemed unnecessary.

On February 9, 2012, Plaintiff filed a step I grievance, which was denied.  Plaintiff's grievance appeals were denied on March 23, 2012, at step II, and on May 31, 2012, at step III. Plaintiff's condition worsened following the discontinuation of his medication.  On February 14, 2012, Plaintiff requested a medical detail stating that he suffered from a medical condition which made him prone to sleeping attacks.  Plaintiff contends that he previously had such a detail and merely wished to have the detail updated and renewed.

On March 26, 2012, Plaintiff missed his health care callout because he suffered a sleeping attack.  When he awoke, Plaintiff's unit officer signed his itinerary and authorized him to go to health services, despite the fact that Plaintiff had missed his appointment time.  When Plaintiff arrived at health services, he was denied access and was issued a class II misconduct for being "out of place."  Plaintiff raised his medical condition as a defense to the misconduct ticket during his hearing on April 2, 2012.  Plaintiff also produced documentation of his medical condition.  However, Defendant Krupiarz dismissed the documentation as old.  Plaintiff asked Defendant Krupiarz to contact health services to obtain confirmation of his medical condition, but Defendant Krupiarz

refused, stating that Plaintiff could appeal the decision. Plaintiff was found guilty and was sentenced to three days loss of privileges. Plaintiff's subsequent appeal was denied by Defendant Howard.

On April 3, 2012, Plaintiff asked Nurse Practitioner Wilson about getting his medical detail renewed. Wilson referred the matter to "RN13." On April 4, 2012, Defendant Davis told Plaintiff that she would not renew the detail because it contained confidential information, despite the fact that Plaintiff agreed to authorize the release of that information. Defendant Davis did agree to allow the release of Plaintiff's medical information to the Hearing Investigator, and stated that she would send a memo to the Hearing Investigator so that he would know how to deal with any misconduct reports on Plaintiff for being late or missing call outs due to falling asleep. Plaintiff states that no such memo was ever issued. Plaintiff filed a grievance on this matter and appealed the denial of the grievance to step III.

In June of 2012, Plaintiff was transferred from KCF to the Newberry Correctional Facility (NCF). From the time of his transfer until May 6, 2013, Plaintiff submitted five health care kites requesting a renewal of his medical detail, to no avail. On June 14, 2013, Plaintiff submitted a sixth request, which was denied by Defendant Shilling on June 20, 2013. Plaintiff filed a grievance, which was denied at each level. The step I grievance responder told Plaintiff that the MDOC was no longer treating conditions such as ADHD and Narcolepsy and referred Plaintiff back to the medical provider for consideration of the medical detail or accommodations to assist Plaintiff with attending callouts and meals in a timely manner.

On July 18, 2013, Defendant Millette denied Plaintiff's request for a medical detail or other accommodation. Plaintiff filed a grievance, which was denied at step II by Defendant Lamb and at step III by the Bureau of Health Care Services. In December of 2013, Plaintiff submitted a health care kite complaining of worsening symptoms. Plaintiff was seen by a nurse, who told him

-4-

that because of the MDOC policy regarding conditions like Narcolepsy, there was nothing that she could do to help him.  Plaintiff was charged $5 for the visit.

On January 6, 2014, during Plaintiff's annual chronic care visit, Plaintiff complained of a worsening of his Narcoleptic symptoms and reported missing work, meals, showers, religious services, law library, recreation, health care, and quartermaster visits because of his sleep attacks. Plaintiff also informed the doctor that he had been subjected to disciplinary actions because of his condition.  The doctor explained that the MDOC no longer provided treatment for conditions like Plaintiff's, but that he would look into getting Plaintiff treatment and would call him out if successful.

Plaintiff was never called out and on February 9, 2014, Plaintiff filed a grievance regarding the denial of treatment.  On February 20, 2014, during a visit on an unrelated matter, Plaintiff asked Dr. Perez about getting treatment for his Narcolepsy.  Dr. Perez responded: "Oh you're the guy with the narcolepsy, the Dr. who had seen you on 1/6/14 told me [he] submitted a request for treatment, but it was denied."  Plaintiff informed Dr. Perez of the worsening of his symptoms. Dr. Perez reviewed Plaintiff's medical records and noted that he had been diagnosed and treated for over twenty-two years prior to his treatment being discontinued.  Dr. Perez told Plaintiff that he would submit another request for treatment and call Plaintiff back in a few days.  Dr. Perez subsequently called Plaintiff to health care and informed him that his request for treatment had been denied. Dr. Perez told Plaintiff that his hands were tied because the MDOC does not treat conditions like Narcolepsy.  Dr. Perez told Plaintiff that the system works the same as out in society, if the insurance company refuses to cover the cost of treatment, the patient must pay for it.  Dr. Perez advised Plaintiff to get more sleep.  Plaintiff continues to be denied treatment and claims to suffer from at least six attacks daily.  Plaintiff generally has a two to three minute warning before an attack,

and if he tries to fight it off, he suffers from alterations in awareness and eventually loses consciousness.  Plaintiff also continues to suffer from cataplexy, sleep paralysis, and hypnagogic and hypnopompic hallucinations.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments, as well as under the American with Disabilities Act (ADA) and the Rehabilitation Act (RA).  Plaintiff sues Defendants Krupiarz and Howard in their individual capacities only.  Plaintiff sues the remaining Defendants in both their individual and official capacities and seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is

-6-

entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts that Defendants Krupiarz violated his due process rights when he refused to allow Plaintiff to call witnesses and present evidence prior to finding him guilty of a class II misconduct. Plaintiff further contends that Defendant Howard violated his due process rights when he refused to overturn Plaintiff's conviction. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). The Sixth Circuit routinely has held that misconduct

-7-

convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.  Plaintiff's claims against Defendants Krupiarz and Howard are properly dismissed.

The court concludes that Plaintiff's ADA, RA, and Eighth Amendment claims against the remaining Defendants are not clearly frivolous and may not be dismissed on initial review.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Krupiarz and Howard will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Heyns, MacLaren, Perry, Davis, Millette, Balmer, Bureau of Health Care Services, Regional Medical Director at KCF Unknown Party #1, Regional Medical Director at the Newberry Correctional Facility Unknown Party #2, Shilling, and Lamb.

An Order consistent with this Opinion will be entered.

Dated:   9/18/2015                                            /s/ R. Allan Edgar
                                                                     R. ALLAN EDGAR
                                                                     UNITED STATES DISTRICT JUDGE