UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN ASHFORD #255100,

    Plaintiff,

v.                                         Case No. 2:15-cv-83
                                                 HON.  ROBERT HOLMES BELL
DANIEL H. HEYNS et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff John Ashford, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of the Eighth Amendment, American with Disabilities Act, and Rehabilitation Act.  The remaining Defendants in this case are:  MDOC Director Daniel Heyns, Warden Duncan MacLaren, Warden Mitch Perry, Nurse Lori Davis, Nurse Lisa Shilling, Nurse Patricia Lamb, Dr. Jeffrey Bomber,[1] Dr. William Borgerding, and the MDOC's Bureau of Health Care Services.  Each Defendant is sued in his or her individual and official capacity.  Plaintiff is seeking injunctive relief and monetary damages.

There are two motions for summary judgment pending in this matter.  First, Dr. Bomber moved for summary judgment arguing, in part, that Plaintiff's claims against him are barred by the statute of limitations.  (ECF No. 49.)  In his response, Plaintiff acknowledged that his claims against Defendant Bomber are time-barred and agreed to dismiss all claims against him. (ECF No. 56.)  Therefore, in the opinion of the undersigned, Defendant Bomber's Motion for Summary Judgment (ECF No. 49) should be granted.

---

[1] Defendant Jeffery Bomber's name has also been spelled "Balmer."

Second, Defendants Heyns, MacLaren, Perry, Davis, Shilling, Lamb, Borgerding, and the Bureau of Health Care Services filed a separate motion for summary judgment on July 29, 2016. (ECF No. 54.) According to W.D. Mich. LCivR 7.2(a)(2), Plaintiff was required to submit his response within twenty-eight days after service of the motion. Plaintiff failed to respond; therefore, the undersigned writes this report and recommendation in the absence of Plaintiff's response.

This case arises from a series of events related to the treatment of Plaintiff's narcolepsy. Narcolepsy is "a chronic sleep disorder that may cause excessive daytime sleepiness and sudden bouts of sleep that may last a few seconds to several minutes, sudden muscle weakness, and vivid dreams." PageID.316. Plaintiff was diagnosed with a mild form of narcolepsy in 1989. PageID.315. Over the years, Plaintiff has been prescribed two different medications to treat his symptoms. PageID.85-86.

On January 28, 2012, Dr. Bomber discontinued Plaintiff's medication—Cogentin. PageID.316. Plaintiff alleges that the Michigan Department of Corrections (MDOC) has a policy to discontinue any medical treatments considered "unnecessary" as a way to lower medical costs. Page.ID.86. Dr. Bomber contends that his decision to discontinue Plaintiff's medication had nothing to do with costs. PageID.316. Instead, Dr. Bomber states that the decision to discontinue the medication was because the medication could have harmful interactions with Plaintiff's diabetes and hypertension. PageID.316. Specifically, Dr. Bomber believed that the potential risk of tachycardia outweighed the benefits of the medication. PageID.316. Moreover, Dr. Bomber determined that Plaintiff's mild symptoms could be managed by "appropriate sleep hygiene." PageID.316.

Plaintiff also attempted to obtain a "narcolepsy detail," which would "inform people" of his narcolepsy condition. PageID.88. The medical records show that Plaintiff first requested a narcolepsy detail on February 14, 2012. PageID.664. After reviewing Plaintiff's medical chart, a medical provider determined that Plaintiff did not need a narcolepsy detail at that time. PageID.319.

On April 3, 2012, Plaintiff again requested a narcolepsy detail. PageID.664. Nurse Davis responded to Plaintiff's request and stated that she could not provide Plaintiff with a narcolepsy detail because she is not permitted to write details containing confidential medical information. PageID.664.

On June 27, 2012, Plaintiff was transferred to Newberry Correctional Facility. PageID.90. Shortly after his transfer, on July 9, 2012, Plaintiff was seen by a medical provider. PageID.320. Upon examination, the provider determined that Plaintiff was alert and oriented. PageID.320. Although Plaintiff requested athletic shoes and gel insoles, Plaintiff did not request a narcolepsy detail at this appointment. PageID.648. The provider issued a "Special Accommodations Order" that allowed Plaintiff to have a bottom bunk and light work duty. PageID.651.

On November 5, 2012, Plaintiff was seen again by another provider for his chronic care appointment to examine his hypertension and diabetes. PageID.643. Similar to the previous appointment, Plaintiff did not request a narcolepsy detail. PageID.643.

On December 27, 2012, Plaintiff requested a narcolepsy detail. PageID.641. Nurse Shilling set up an appointment for Plaintiff to meet with a provider, but Plaintiff failed to show up. PageID.640.

On February 27, 2013, Plaintiff again requested a narcolepsy detail.  PageID.637.  Plaintiff did not show up at his appointment on March 1, 2013, to discuss the detail because he was at lunch.  PageID.42, 635.

On May 7, 2013, Plaintiff again requested a narcolepsy detail.  PageID.620.  Nurse Shilling responded to Plaintiff's request by asking Plaintiff why a detail was needed.  PageID.620.  Nurse Shilling noted that Plaintiff already had special accommodations for a bottom bunk and light work duty.  PageID.620.  Plaintiff did not respond to Nurse Shilling's inquiry.  PageID.321.

On June 14, 2013, Plaintiff again requested a narcolepsy detail.  PageID.618.  In response to this request, Nurse Shilling informed Plaintiff that she could not issue that type of detail because she could not reveal confidential medical information.  PageID.618.

On July 18, 2013, Plaintiff had an appointment with a provider to discuss his detail requests.  PageID.322.  Plaintiff failed to show up to the appointment.  PageID.614.  The provider attempted to locate Plaintiff by calling his housing unit supervisor.  PageID.614.  The housing unit supervisor stated that Plaintiff went to lunch, returned to his cell, and then went out to the yard.  PageID.614.  The provider decided not issue a detail because Plaintiff appeared to be missing appointments for reasons other than sleepiness.  PageID.614.

On November 26, 2013, Plaintiff complained that he was suffering from hallucinations, excessive sleeping, and fatigue.  PageID.596.  Plaintiff was seen by a provider the following day.  PageID.596.  The provider discussed the hallucinations with Plaintiff.  PageID.596.

On January 6, 2014, Plaintiff saw a provider for his annual chronic care visit.  PageID.580.  Plaintiff informed the doctor that his narcolepsy was interfering with his daily activities and ability to comply with prison rules.  PageID.580.  After discussing Plaintiff's requests with two other doctors—Dr. Bomber and Dr. Borgerding—the provider determined that

Plaintiff was not exhibiting the common symptoms of narcolepsy, such as muscle weakness or loss of muscle function. PageID.322, 578. Moreover, the providers believed that his symptoms could be managed by maintaining a healthy sleep hygiene. PageID.322. Thus, Plaintiff was not prescribed any medication. PageID.578.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Borgerding when he denied Plaintiff his narcolepsy medication.[2] In addition, Plaintiff alleges that the Bureau of Health Care Services violated his Eighth Amendment rights because it has a policy to deny medication in an attempt to lower costs. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

---

[2] Plaintiff's Amended Complaint alleges Eighth Amendment violations against Defendant Bomber, Doe #1, Doe #2, and Bureau of Health Care Services. Defendant Borgerding is both Doe #1 and Doe # 2. (ECF No. 19, 30.) Moreover, as discussed above, it is recommended that Defendant Bomber's motion for summary judgment has been granted.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x. 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x. 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x. 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x. 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x. 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, Plaintiff has failed to show a violation of his Eighth Amendment rights. Plaintiff alleges that he received inadequate medical treatment because he was not provided with

medication to treat his narcolepsy. However, the facts in this case clearly demonstrate that the decision to discontinue Plaintiff's medication was a medical judgment, made by several medical professionals. Three doctors—including Dr. Borgerding—discussed Plaintiff's narcolepsy complaints. After the discussion, the doctors determined that Plaintiff should not resume the narcolepsy medication for two reasons. First, the doctors were concerned with how the medication would interact with Plaintiff's hypertension and diabetes. Second, the doctors determined that Plaintiff could manage his mild form of narcolepsy through maintaining a healthy sleep hygiene. The medical judgment by these doctors should not be second guessed.

In addition, Plaintiff alleged that the Bureau of Health Care Services violated Plaintiff's Eighth Amendment rights. The Bureau of Health Care Services is an entity within the Michigan Department of Corrections. The Michigan Department of Corrections is an arm of the State of Michigan. The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). Thus, Plaintiff may not maintain a § 1983 action alleging an Eighth Amendment violation against the Bureau of Health Care Services. Therefore, in the opinion of the undersigned, Defendants are entitled to judgments as a matter of law on Plaintiff's Eighth Amendment claim.

Next, Plaintiff asserts that Defendants Heyns, MacLaren, Perry, Davis, Shilling, Lamb, and the Bureau of Health Care Services violated the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) because they refused to make reasonable accommodations for Plaintiff's disability and they denied Plaintiff of services and programs.  Title II of the ADA provides, in part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  Under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008). The elements for a claim under the RA are substantially similar to those under the ADA, except that the RA applies to programs or activities receiving federal financial assistance. *See Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001).

Defendants contend that Plaintiff cannot sue Defendants alleging violations of the ADA and RA because they are not proper defendants.  Although it is true that Title II of the ADA does not provide liability against a public official acting in his or her individual capacity, the ADA does provide liability if officials, acting in their official capacity, deny the disabled access to services.  *See United States v. Georgia*, 546 U.S. 151, 157 (2006); *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  Here, Plaintiff has sued each Defendant in both individual and official capacities.  Thus, Plaintiff's claims against Defendants in their official capacities are proper.  In addition, Bureau of Health Care Services may be a proper defendant because, by enacting the ADA and RA, Congress abrogated the state's sovereign immunity provided by the Eleventh

Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (The ADA "validly abrogates state sovereign immunity" for "conduct that actually violates the Fourteenth Amendment [.]").

Nonetheless, Plaintiff's ADA and RA claims against Defendants should be dismissed because Plaintiff has not alleged the denial of any benefits or services due to his disability. Although Plaintiff alleges that he was denied his narcolepsy medication, as discussed above, the discontinuance of his medication was a medical decision made by three medical professionals and not a decision based on cost. *See McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (distinguishing between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled," and holding that inadequate medical treatment claims do not state an ADA violation). In addition, every request Plaintiff made for a narcolepsy detail was responded to by a nurse or medical provider. On several occasions, nurses informed Plaintiff that they could not issue the detail because it would reveal confidential medical information. Thus, the nurses would set up an appointment with a medical provider who could issue the detail. However, Plaintiff often failed to show up at those appointments because he decided to go to lunch or to the yard. Finally, contrary to Plaintiff's allegations, he was provided reasonable accommodations for his narcolepsy. For example, Plaintiff's special accommodations orders allowed him to have the bottom bunk and perform "light work" without heavy machinery. Therefore, in the opinion of the undersigned, Defendants are entitled to judgment as a matter of law on Plaintiff's ADA and RA claims.

Accordingly, it is recommended that Defendant Bomber's Motion for Summary Judgment (ECF No. 49) be granted. It is further recommended that Defendants Heyns, MacLaren,

Perry, Davis, Shilling, Lamb, Borgerding, and the Bureau of Health Care Services' Motion for Summary Judgment (ECF No. 54.) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:      September 21, 2016               */s/ Timothy P. Greeley*
                                                                TIMOTHY P. GREELEY
                                                                UNITED STATES MAGISTRATE JUDGE